Jonathan D. Miller (SBN 220848)
jonathan@nshmlaw.com
**NYE, STIRLING, HALE,**
**MILLER & SWEET LLP**
33 West Mission Street, Suite 201
Santa Barbara, California 93101
Telephone: (805) 963-2345
Facsimile: (805) 284-9590

*Attorney for Plaintiff Candelaria Jelinski*

### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANDELARIA JELINSKI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRICOPIAN, INC. DBA FUEL ROD<br><br>Defendant. | CASE NO.: 3:24-cv-00300-TSH<br>*Assigned to Magistrate Judge Thomas S. Hixson*<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>1.  Violation of Title III of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 *et seq.*)<br><br>2.  Violation of California's Unruh Civil Rights Act (Cal. Civ. Code § 51.) |

Plaintiff Candelaria Jelinski (hereinafter "Plaintiff" or "Ms. Jelinski"), individually and on behalf of all others similarly situated, by her attorneys, asserts the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on her personal knowledge:

### NATURE OF THE ACTION

1.      Plaintiff Candelaria Jelinski is a legally blind individual who relies upon auxiliary aids and services such as screen reading software, accessible electronic and information technologies, and other effective methods of making visually delivered materials available to persons who are blind or have low vision. Defendant Tricopian, Inc.

dba Fuel Rod ("Fuel Rod" or "Defendant") provides self-service kiosks that allow sighted consumers to pay for and obtain a portable charging unit to charge their mobile device or swap their existing empty portable charging unit for a fully charged one—all without the assistance of an employee or third party. ("Self-Service Kiosks"). The Self-Service Kiosks allows sighted customers to choose whether they will buy a new charger or switch their existing one:



Yet, Fuel Rod's kiosks are not available to legally blind individuals because they lack any accessible features that would allow those individuals to (1) locate and (2) use their Self-Service Kiosks.

2.      According to Fuel Rod's Securities and Exchange Commission offering memorandum, Fuel Rod operates "over 500 kiosks operating across the United States, including strategic locations in 50+ international airports and 30 major theme parks, the company has established a broad and diversified distribution network, covering high-traffic areas and attracting a wide range of potential customers." *See*

https://www.sec.gov/Archives/edgar/data/1655749/000166516024000054/offeringmemof
ormc.pdf ("SEC Offering Memorandum") at page 22.

3.      Fuel Rod's "unique, patented, integrated, product-plus-service" provides its
customers "valuable, recurring post-sales service by allowing customers to swap their
depleted or end-of-life chargers for fully charged, functional ones at any FuelRod kiosk."
SEC Offering Memorandum at 4. Yet Fuel Rod denies legally blind individuals like Ms.
Jelinski access to its products and services and the "valuable, recurring post-sales service."

4.      Ms. Jelinski brings this action individually and on behalf of all others
similarly situated to compel Defendant to cease unlawful discriminatory practices and
implement policies and/or procedures that will ensure legally blind individuals such as
herself receive effective communication, full and equal enjoyment, and a meaningful
opportunity to participate in and benefit from Defendant's goods and/or services. Ms.
Jelinski seeks declaratory, injunctive, and equitable relief and attorneys' fees and costs to
redress Defendant's unlawful discrimination on the basis of disability in violation of Title
III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"), and its
implementing regulations. Additionally, she brings this action individually and on behalf
of all other similarly situated California residents and seeks declaratory, injunctive, and
equitable relief and attorneys' fees and costs to redress Defendant's unlawful
discrimination on the basis of disability in violation of California's Unruh Civil Rights Act,
California Civil Code § 51 *et seq.* ("Unruh Act"), and for minimum statutory damages, in
accordance with California Civil Code § 52(a).

5.      Ms. Jelinski visited Defendant's Self-Service Kiosks and was denied full and
equal access as a result of Defendant's inaccessible Self-Service Kiosks.

6.      Defendant's Self-Service Kiosks do not contain the necessary technology
that would enable a legally blind person to process a transaction independently and without
the assistance of others in the same manner afforded to those without visual impairments.
Defendant does not provide any qualified readers to aid legally blind customers in

accessing the Self-Service Kiosks.

7.      In the wave of automation and self-service shopping made possible by technological advances in recent years, self-service kiosks are becoming an increasingly prominent and popular way for consumers to shop. Despite readily available accessible technology, such as the technology used at accessible ATMs which makes use of tactile controls and screen reading software, Fuel Rod has chosen to rely on an exclusively visual interface. Fuel Rod's sighted customers can pay to rent the portable chargers without the assistance of others. Fuel Rod's sighted customers can also exchange depleted chargers at the kiosk.  However, legally blind individuals must rely on sighted companions or strangers to assist them in (1) locating Fuel Rod's kiosks, (2) renting portable chargers, or (3) returning portable charges at the Self-Service Kiosks. Legally blind individuals must provide their credit cards or cash to often-unknown third parties in order to utilize Fuel Rod's Self-Service Kiosks.

8.      By failing to make its touchscreen kiosks accessible to legally blind persons, Defendant, a public accommodation subject to Title III of the ADA and the Unruh Act, deprives legally blind individuals the full benefits of Defendant's Self-Service Kiosks—all benefits it affords nondisabled individuals—thereby increasing the sense of isolation and stigma among these Americans that Title III of the ADA and the Unruh Act were meant to redress.

9.      Defendant has demonstrated through its interactions with Ms. Jelinski that it has adopted a policy, practice and/or procedure of refusing to provide accessible Self-Service Kiosks for its legally blind customers, and that this decision, on information and belief, is based purely on financial considerations.

10.     Defendant's discrimination sends a message that it is acceptable for companies to adopt policies, procedures, and practices that deprive blind and legally blind individuals of the opportunity to fully access and enjoy Defendant's goods and/or services. This discrimination is especially pronounced as the Self-Service Kiosks are marketed to be

self-service. Specifically, the Fuel Rod website boasts that the kiosks are simple to use, self-service, and the "ideal energy solution for today's mobile lifestyle." https://www.fuel-rod.com/; *see also* https://www.fuel-rod.com/blogs/news/fuelrod-the-ultimate-solution-for-on-the-go-charging-needs ("[Fuel Rod] offer[s] the convenience of being able to charge your device anytime, anywhere.")

11. The ADA and the Unruh Act expressly contemplate injunctive relief aimed at modification of a policy or practice that Plaintiff seeks in this action. In relevant part, the ADA states:

> Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods . . . .

42 U.S.C. § 12188(a)(2); Cal. Civ. Code, § 52(c)(1).

12. Consistent with 42 U.S.C. § 12188(a)(2) and the Unruh Act, Ms. Jelinski seeks a permanent injunction requiring that:

a. Defendant take all steps necessary to bring its Self-Service Kiosks into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its Self-Service Kiosks are fully accessible to and independently usable by individuals with visual disabilities, through the implementation of necessary technology that would enable legally blind persons to process a transaction in a manner that ensures the same degree of personal privacy afforded to those without visual impairments and to use the Self-Service Kiosks without the assistance of others in the same manner afforded to those without visual impairments;

b. Defendant modify its existing policies, practices and/or procedures to ensure that the accessibility barriers at Defendant's Self-Service Kiosks do not reoccur; and

c. Ms. Jelinski's representatives shall monitor Defendant's Self-Service

Kiosks to ensure that the injunctive relief ordered pursuant to Paragraph 11.a. and 11.b. has been implemented and will remain in place.

13.    Ms. Jelinski's claims for permanent injunctive relief are asserted as a nationwide class claim pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where a plaintiff seeks injunctive relief for his or her own benefit and the benefit of a class of similarly situated individuals. To that end, the note to the 1996 amendment to Rule 23 states:

> Subdivision(b)(2).  This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate . . ..  Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

Fed. R. Civ. P. 23(b)(2).

14.    In addition, Ms. Jelinski's claims for minimum statutory damages pursuant to California Civil Code section 52(a) are asserted as a California statewide class claim pursuant to Fed. R. Civ. P. 23(b)(3).

## PARTIES

15.    Plaintiff Candelaria Jelinski is, and at all times relevant hereto has been, a resident of San Francisco, California. Ms. Jelinski suffers from retinitis pigmentosa and glaucoma, and has been legally blind at all times relevant hereto. Like many other legally blind individuals, Ms. Jelinski relies upon auxiliary aids and services such as screen reading software, accessible electronic and information technologies, staff assistance, and/or other effective methods of communication to be as independent as possible.

16.    Ms. Jelenski is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§

36.101 *et seq*., and the Unruh Act, Cal. Civ. Code, § 51 *et seq.*

17.     Defendant Tricopian, Inc. dba Fuel Rod is a Delaware corporation with its principal place of business located at 11880 Community Road, Suite 300, Poway, California 92064. Tricopian, Inc. dba Fuel Rod operates Self-Service Kiosks that provide rental portable chargers throughout the United States.

18.     Defendant's Self-Service Kiosks are places of public accommodation as defined in 42 U.S.C. §12181(7)(E). Thus, Defendant is subject to the requirements of the ADA and the Unruh Act.

## FACTUAL BACKGROUND

### Ms. Jelinski Has Been Denied Full and Equal Access to
### Defendant's Self-Service Kiosks

19.     Defendant provides that customers are able to obtain its portable charging systems "[w]ith the simple swipe of a credit card or the use of the FuelRod mobile app . . . from any of our patented, app-enabled, touch-free kiosks." https://www.fuel-rod.com/pages/about-us.

20.     According to Fuel Rod's initial public offering ("IPO") memorandum, "[a]s of September 2023, FuelRod has sold over 1.5 million FuelRod portable chargers (*i.e.* the initial purchases or starter kits) and served over 5 million mobile devices on the go through its network of uniquely innovative, "swap as a service" kiosks nationwide." *See* SEC Offering Memorandum at page 4. Fuel Rod believes that "[a]t the core of FuelRod's competitive business strategy is the unique selling point (USP) based on the "swap as a service" business model." *Id*.

21.     Fuel Rod's "cloud-enabled network of over 500 kiosks" permits users to purchase and swap their empty chargers for fully charged ones at any Fuel Rod charging kiosk. Fuel Rod customers purchase the starter kit that contains the portable charger from

the Self-Service Kiosk. "After the initial purchase of a starter kit, the customer owns the portable charger and has the freedom of choice to either recharge it by themselves or to swap it for a freshly charged one on the go. No need to pay costly rental fees. No need to worry about having to return the charger to the same rental location." SEC Offering Memorandum at page 4.

22.     The Self-Service Kiosks operate in "strategic locations in 50+ international airports and 30 major theme parks." *Id*. at page 22. "All of [Fuel Rod's] current services are variants of one type of service and/or product. *Id*. at page 9. The Self-Service Kiosks allow the customer to choose to purchase a new charging kit or swap an existing kit.



*See* https://www.instagram.com/fuelrod_official/.

23.     Customers can also use the mobile application to "1) find the nearest FuelRod charging kiosk, 2) transact with any kiosk (buy and swap), 3) purchase any FuelRod product online, 4) purchase FuelRod club membership, and 5) contact the helpline to speak to a live service agent." SEC Offering Memorandum at 5.

24.     Ms. Jelinski visited the Fuel Rod unit at 415 Mission Street, San Francisco, California 94105 in September 2023, and attempted to use the Self-Service Kiosk to rent a portable charger. This Self-Service Kiosk was implemented on or around May 7, 2021. *See* https://www.fuel-rod.com/blogs/news/charging-service-now-available-at-salesforce-transit-center-in-san-francisco. Fuel Rod's co-founder, Joe Yeagley, stated, "[w]e're very pleased to bring our FuelRod program to the Salesforce Transit Center in San Francisco . . . Quick access to our FuelRods through our SwapBox kiosks gives commuters an easy and cost-effective way of recharging their portable devices – reducing 'charging anxiety' and enhancing the Transit Center experience." Mark Zabaneh, Executive Director of the Transbay Joint Powers Authority, stated that "[w]e welcome FuelRod mobile charging service to the transit center and are happy to provide this service to our commuters and visitors."

25.     Because of its inaccessible features, Ms. Jelinski was unable to operate the Self-Service Kiosk and rent the charger. Ms. Jelinski was unable to find any employee to help her access the Self-Service Kiosk.

26.     Ms. Jelinski has previously encountered Fuel Rod's Self-Service Kiosks at Oakland International Airport where she regularly travels.

27.     As a result of Defendant's failure to ensure effective communications with Plaintiff, and the denial of auxiliary aid and services, she received services that were objectively substandard, inaccessible, and inferior to those provided to sighted customers, and did not receive the benefit at all of renting the portable chargers from Fuel Rod; she was thus subjected to discriminatory treatment because of her disability.

28.     Despite this difficulty, frustration, and unequal treatment, Ms. Jelinski will seek Fuel Rod's services in the future, whether by choice or necessity, due to the convenience of Defendant's Self-Service Kiosks. She plans to return to Defendant's Self-Service Kiosks, including the one at 415 Mission Street, San Francisco, California 94105, but is deterred from doing so due to the discrimination she has faced and expects to face in

the future. Ms. Jelinski would like to participate in Fuel Rod's services on February 28, 2024, when she plans to travel from Oakland International Airport to Harry Reid International Airport in Las Vegas, and on her subsequent return trip. Furthermore, Plaintiff intends to return to Defendant's Self-Service Kiosks to ascertain whether those Self-Service Kiosks remain in violation of accessibility standards.

**Defendant Repeatedly Denies Individuals With Disabilities**

**Full and Equal Access to Defendants' Goods and/or Services**

29.     As the owner and manager of its Self-Service Kiosks and website, Defendant employs centralized policies, practices, and procedures with regard to its company-wide policy of accessibility of the Self-Service Kiosks. Fuel Rod believes that it has "successfully demonstrated and validated our innovative 'product-plus-service' strategy based on the USP of swappable power on the go." SEC Offering Memorandum at page 4.

30.     Though Defendant may have centralized policies regarding the maintenance and operation of its Self-Service Kiosks and website, Defendant has never had a plan or policy that is reasonably calculated to make its Self-Service Kiosks fully accessible to, and independently usable by, legally blind individuals.

31.     As a result of Defendant's non-compliance with the ADA and Unruh Act, Plaintiff has been denied the benefit of full and equal enjoyment of Defendant's goods, services, facilities, privileges, advantages, or accommodations, has been denied participation and has been treated unequally by the Defendant, and Defendant has failed to provide effective and accessible auxiliary aids or services that protect Plaintiff's privacy and independence.

32.     If Defendant's Self-Service Kiosks were accessible, *i.e.,* if Defendant removed and remediated the access barriers described above, Plaintiff could independently and privately utilize Defendant's goods and services.

33.     Unfortunately, Defendant denies approximately 8.1 million[1] Americans who have difficulty seeing access to its goods, products, and services because its Self-Service Kiosks are not readily accessible and usable by legally blind persons.

## JURISDICTION AND VENUE

34.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

35.     Plaintiff's claims asserted herein arose in this judicial district, and Defendant does substantial business in this judicial district. Specifically, Defendant is registered to do business in California and has many locations throughout the state, including in this judicial district.

36.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2). Defendant is subject to personal jurisdiction in this District because Defendant does substantial business in this District, and a substantial part of the events or omissions giving rise to these claims occurred in this District. Defendant engaged in the extensive promotion, marketing, distribution, and sales of the services at issue in this District.

## CLASS ASSERTIONS

37.     Ms. Jelinski brings this matter on behalf of herself and those similarly situated.

38.     The Nationwide Injunctive Class is defined as:

---

[1]     Press Release, United States Census Bureau, Nearly 1 in 5 People Have a Disability in the U.S., Census Bureau Reports *Report Released to Coincide with 22nd Anniversary of the ADA* (Jul. 25, 2012), *available at* https://www.census.gov/newsroom/releases/archives/miscellaneous/cb12-134.html (last accessed February 14, 2024) ("About 8.1 million people had difficulty seeing, including 2.0 million who were blind or unable to see.").

> All legally blind individuals who were directly exposed to Defendant's self-service rental kiosks in the United States during the applicable limitations period but could not utilize them because the kiosks lack any accessible features that would allow a legally blind person to use them (the "Nationwide Injunctive Class").

Plaintiff reserves the right to amend or modify the Nationwide Injunctive Class definition in connection with a motion for Class certification and/or the result of discovery.

39. Ms. Jelinski also seeks certification of the following California Unruh Act minimum statutory damages class:

> All legally blind individuals who were directly exposed to Defendant's self-service rental kiosks in California during the applicable limitations period but could not utilize them because the kiosks lack any accessible features that would allow a legally blind person to use them (the "California Unruh Act Minimum Statutory Damages Class").

Plaintiff reserves the right to amend or modify the California Unruh Act Minimum Statutory Damages Class definition in connection with a motion for Class certification and/or the result of discovery.

40. The California Unruh Act Minimum Statutory Damages Class seeks class-wide damages pursuant to California Civil Code § 52(a) in the amount of $4,000 per violation based on Defendant's wrongful policy and practice of failing to provide full and equal access to legally blind Californians as alleged herein.

41. This action should be certified as a class action under Federal Rule of Civil Procedure 23(a) and (b)(2) for the Nationwide Injunctive Class. It satisfies the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

A. <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of legally blind individuals who are Class Members who have been harmed and suffered discrimination due to Defendant's failure to comply with the ADA's auxiliary aids and services requirements.

B.      Commonality: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are denied their civil rights to full and equal access to, and use and enjoyment of, Defendant's goods and/or services due to Defendant's failure to make its kiosks fully accessible and independently usable as described above. In addition, Fuel Rod's kiosks are identical and ubiquitous. *See Davis v. Laboratory Corp. of Am. Holdings*, No. 22-55873, 2024 WL 489288, at *2 (9th Cir. Feb. 8, 2024) (unpublished) ("Because all class members maintain that their injury resulted from the inaccessibility of a LabCorp kiosk, the commonality requirement is satisfied.")

C.      Typicality: Plaintiff's claims are typical of the claims of the members of the proposed Nationwide Injunctive Class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct. Defendant states its Self-Service Kiosks are the same kiosk and software across their network. *See Davis*, No. 22-55873, at *2 (finding typicality exists where Plaintiff is blind, tried to access LabCorp services, and was unable to do so using a kiosk.)

D.      Adequacy: The Plaintiff is an adequate Class representative. None of her interests conflict with the interests of the Class Members she seeks to represent; Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class—all of whom are similarly situated legally blind individuals, and have a strong interest in vindicating their own and others civil rights—and she has retained counsel that is competent and experienced in complex class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA and Unruh Act.

42.     Class certification of the Nationwide Injunctive Class is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted on or refused to act on grounds generally applicable to the Class, making appropriate declaratory, injunctive, and equitable

relief with respect to Plaintiff and the Class as a whole. *See Davis*, No. 22-55873, at *3 (finding class certification was proper where "all class members were injured by the complete inaccessibility of LabCorp kiosks for blind individuals.")

43.     This action should be further certified as a class action under Federal Rule of Civil Procedure 23(a) and (b)(3) for the California Unruh Act Minimum Statutory Damages Class. Plaintiff asserts that this class, which is limited to class members who attempted to access a Self-Service Kiosk in California, satisfies the class action prerequisites of numerosity, commonality, typicality, and adequacy for the same reasons set forth in the preceding paragraphs. In addition:

A.     <u>Predominance</u>: Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the California Unruh Act Minimum Statutory Damages Class. The class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's encounters with legally blind California residents.

B.     <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

i.     The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

ii.     The individual claims of the Class Members are relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not   totally impossible—to justify individual actions;

iii.     When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were

attempted through filing, discovery, and trial of individual cases;

       iv.    This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

       v.    Plaintiff knows of no difficulties to be encountered in the management of this action that would preclude its maintenance as a class action;

       vi.    A class action will assure uniformity of decisions among Class Members;

       v.    The Class is readily identifiable from Defendant's own records and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and,

       vi.    Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action.

44.    Accordingly, this case should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE ADA, TITLE III
### [*42 U.S.C. §§ 12101 et seq.*]

45.    Ms. Jelinski restates each and every assertion set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

46.    At all times relevant to this action, Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181, *et seq.* was in full force and effect and applied to Defendant's conduct.

47.     At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, were in full force and effect and applied to the Defendant's conduct.

48.     At all times relevant to this action, Ms. Jelinski has been substantially limited in the major life activity of seeing. Accordingly, she is considered an individual with a disability as defined under the ADA, 42 U.S.C. § 12102(2).

49.     Defendant owns, leases, and/or operates Self-Service Kiosks to rent portable chargers that are places of public accommodation as defined under Title III of the ADA, 42 U.S.C. § 12181(7)(E); *Weyer v. Twentieth Century Fox Film Corp*., 198 F.3d 1104 (9th Cir. 2000).

50.     Title III of the ADA prohibits discrimination on the basis of disability "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodations." 42 U.S.C. § 12182(a).

51.     Pursuant to Title III of the ADA and its implementing regulations, a public accommodation cannot deny participation or offer unequal or separate benefits to individuals with disabilities. 42 U.S.C. § 12182(b)(1)(A); 28 C.F.R. §§ 36.202.

52.     Pursuant to Title III of the ADA and its implementing regulations it "shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E).

53.     Pursuant to Title III of the ADA and its implementing regulations, a public accommodation shall furnish appropriate auxiliary aids and services to ensure effective communication with individuals with disabilities. 42 U.S.C. § 12182(b)(2)(A)(iii); 28 C.F.R. § 36.303(b)(1).

54.     Pursuant to Title III of the ADA and its implementing regulations, a public accommodation, in choosing the type of auxiliary aid or service to ensure effective

communication, must consider the "method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place." 28 C.F.R. § 36.303(c)(1)(ii).

55.     Pursuant to Title III of the ADA and its implementing regulations, in order to be effective, the type of auxiliary aid or service provided by the public accommodations "must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 36.303(c)(1)(ii). To this end, the Ninth Circuit has explained, "assistive technology is not frozen in time: as technology advances, [ ] accommodations should advance as well." *Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1163 (9th Cir. 2011).

56.     Auxiliary aids and services include, but are not limited to, audio recordings, screen reader software, magnification software, optical readers, secondary auditory programs, large print materials, accessible electronic and information technology, other effective methods of making visually delivered materials available to individuals who are blind or have low vision, and other similar services and actions. 28 C.F.R. §§ 36.303(b)(2), (4).

57.     Defendant discriminated against Ms. Jelinski on the basis of her disability by denying access to full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations of its place of public accommodation, and equal opportunity to participate in and benefit from Defendant's portable charger rental services, in violation of the ADA.

58.     Defendant further discriminated against Plaintiff by failing to ensure effective communication through the specific provision of accessible and effective auxiliary aids and services.

59.     Defendant has violated Title III by, without limitation, failing to take the steps necessary to make its Self-Service Kiosks readily accessible and usable by legally blind persons, thereby denying individuals with visual disabilities the benefits of the Self-

Service Kiosks and portable charger rentals, providing Plaintiff with benefits that are not equal to those it provides sighted individuals, and denying her effective communication.

60.    Defendant has further violated Title III by, without limitation, utilizing administrative methods, practices, and policies that allow its Self-Service Kiosks to be made available without consideration of consumers who can only participate in and benefit from Defendant's portable charger rental services with screen-reader programs.

61.    Making its Self-Service Kiosks readily accessible and usable by legally blind persons does not change the content of Defendant's Self-Service Kiosks or result in making the service different, but rather enables individuals with visual disabilities to access the Self-Service Kiosks that Defendant already provides.

62.    As set out above, absent injunctive relief there is a clear risk that Defendant's actions will recur with Plaintiff and/or additional legally blind persons.

63.    Ms. Jelinski is therefore entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1) and/or common law.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE UNRUH CIVIL RIGHTS ACT

**[Cal. Civil Code § 51 *et seq.*]**

64.    Ms. Jelinski restates each and every assertion set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

65.    The Unruh Civil Rights Act, California Civil Code section 51 provides that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ. Code § 51(b).

66.     Defendant is a business establishment within the meaning of the Unruh Act. Defendant is the owner and operator of business establishments.

67.     Defendant's conduct as asserted herein constitutes a violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq*., as set forth above. California Civil Code § 51(f) provides that a violation of the right of any individual under the ADA shall also constitute a violation of the Unruh Civil Rights Act.

68.     Defendant violated the Unruh Act by its acts and omissions, as set forth herein. Specifically, Fuel Rod's system for offering Self-Service Kiosks to the public at hundreds of locations throughout California is a business establishment within the meaning of Civil Code § 51, *et seq*. Fuel Rod generates millions of dollars in revenue from its 533+ Self-Service Kiosks nationwide—114 in California—from which customers can rent portable chargers. *See generally*, SEC Offering Memorandum. The Self-Service Kiosks are an accommodation, advantage, facility, privilege, and service provided by Fuel Rod, which is inaccessible to legally blind patrons. This inaccessibility denies legally blind patrons full and equal access to the accommodations, advantages, facilities, privileges, and services that Defendant makes available to the non-disabled public, in violation of the Unruh Civil Rights Act, California Civil Code § 51, et seq. These violations are ongoing.

69.     Defendant's actions constitute intentional discrimination against the class on the basis of a disability in violation of California Civil Code §§51, et seq. Defendant is aware of the complete lack of access of the Self-Service Kiosks to blind persons yet has deliberately chosen to provide a benefit and service that is inaccessible to the blind.

70.     The actions of Defendant were and are in violation of the Unruh Civil Rights Act, California Civil Code §§ 51, *et seq*., and therefore Plaintiff is entitled to injunctive relief remedying the discrimination. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the class will continue to suffer irreparable harm.

71.     Plaintiff and the California class are further entitled to statutory minimum

damages pursuant to California Civil Code § 52 for every individual violation; *i.e.,* each time a legally blind individual was directly exposed to the inaccessible Self-Service Kiosk.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and the members of the Class, prays for:

a.     A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant took no action that was reasonably calculated to ensure that its Self-Service Kiosks were fully accessible to and independently usable by legally blind individuals;

b.     A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) , and California Civil Code, § 51 *et seq.,* which directs Defendant to take all steps necessary to bring its Self-Service Kiosks into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its Self-Service Kiosks are fully accessible to and independently usable by legally blind individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause it to remain fully in compliance with the law—the specific injunctive relief requested by Plaintiff is described more fully in paragraph 11, *supra.*

c.     A permanent injunction enjoining Defendant from continuing its discriminatory conduct;

d.     An Order certifying the Classes proposed by Plaintiff, naming Plaintiff as Class representative, and appointing her counsel as Class counsel;

e.     Payment of minimum statutory damages, in accordance with California Civil Code §§ 52(a) and 54.3 to the California Unruh Act Minimum Statutory Damages Class;

f.     Payment of costs of suit;

g.      Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205, 28 CFR § 36.505, Cal. Civil Code §52, and Civ. Proc. Code § 1021.5, including costs of monitoring Defendant's compliance with the judgment (*see Gniewkowski v. Lettuce Entertain You Enterprises, Inc.*, Case No. 2:16-cv-01898-AJS (W.D. Pa. Jan. 11, 2018) (ECF 191) ("Plaintiffs, as the prevailing party, may file a fee petition before the Court surrenders jurisdiction. Pursuant to *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559 (1986), *supplemented*, 483 U.S. 711 (1987), the fee petition may include costs to monitor Defendant's compliance with the permanent injunction."); *see also Access Now, Inc. v. Lax World, LLC*, No. 1:17-cv-10976-DJC (D. Mass. Apr. 17, 2018) (ECF 11) (same);

h.      Award of prejudgment and post-judgment interest pursuant to California Civil Code §3291;

i.      An Order retaining jurisdiction over this case until Defendant has complied with the Court's Orders; and,

j.      The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated: February 14, 2024                    Respectfully Submitted,

                                        */s/ Jonathan D. Miller*
                                        Jonathan D. Miller
                                        jonathan@nshmlaw.com
                                        **NYE, STIRLING, HALE, MILLER & SWEET LLP**
                                        33 W. Mission Street, Suite 201
                                        Santa Barbara, California 93101
                                        Phone: (805) 963-2345

                                        *Attorney for Plaintiff Candelaria Jelinski*

## <u>CERTIFICATE OF SERVICE</u>

I, Jonathan D. Miller, hereby certify that the foregoing document was filed

through the ECF system and will be sent electronically to the registered participants as

identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those

indicated as non-registered participants this 14th day of February, 2024.

*/s/ Jonathan D. Miller*
Jonathan D. Miller
